UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
VICTORIJA PORINA, as personal representative :
of ARNIS PORNIS, deceased; et al., :
                              Plaintiffs, :        05 CIV. 5621 (RPP)
                                      :
                                      :         **OPINION AND ORDER**
                                      :
MARWARD SHIPPING CO., LTD., :
                              Defendant. :
                                      :
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On June 16, 2005, Plaintiffs filed a Complaint against Atlantic Ro-Ro Carriers, Inc. ("Atlantic"), CIS Navigation Inc., Lumar (Odessa) S.A., and Lumar, S.A. Complaint ("Compl.") at 1. Plaintiff Victorija Porina and five other Plaintiffs bring this action as the personal representatives of six seamen who drowned in the Baltic Sea on May 10, 2004. On August 23, 2005, the action was discontinued against Atlantic Ro-Ro Carriers and CIS Navigation, pursuant to a Stipulation of Discontinuance with Prejudice. On September 22, 2005, Plaintiffs filed a motion to amend their complaint to name Marward Shipping Company, Limited ("Marward") as the sole Defendant. Upon consent of the Defendant, the motion was granted. On November 14, 2005, Defendant Marward moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) or, in the alternative, on the grounds of forum non conveniens. For the following reasons, Defendant's motion to dismiss for lack of personal jurisdiction is granted.

**BACKGROUND**

The Complaint alleges that the fishing vessel "Astrida" was hit and sunk by M/V

Salvador during the course of M/V Salvador's regularly-scheduled cargo service between United States ports and Port St. Petersburg, Russia, causing the death of the six seamen. M/V Salvador, owned by Defendant Marward, was transporting cargo from Port Baltimore, Maryland to Port St. Petersburg, Russia. Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Marward Shipping Co., Ltd. ("Pl. Mem. in Opp.") at 1. At the time of the alleged collision, the M/V Salvador was sailing pursuant to a charter dated September 20, 2002 between Florani Shipping Co. Ltd., Cyprus ("Florani") as owner and Ambery Maritime Limited, Valleta Malta ("Ambery") as charterer "from the time of vessel's direct extension of present period for worldwide trading in Charterers' option via good, safe berth(s)/good, safe port(s), intention: U.S. Gulf, Caribbean Sea, U.S. East Coast/Canada, North Continent, United Kingdom and Baltic ports including Gulf of Finland and St. Petersburg, Russia."[1] Charter at 1.

On March 29, 2004, Marward purchased the M/V Salvador from Florani. Pl. Mem. in Opp. at 1. On May 12, 2004, Marward changed the vessel's name to M/V Vladimir. Id. Marward was incorporated under the laws of Cyprus and has its sole place of business in Limassol, Cyprus. Declaration of Claudio Cuss in Support of Motion to Dismiss Amended Complaint ("Cuss Decl."), dated November 1, 2005, ¶ 3. Marward became owner of the M/V Vladimir, a Cypriot-flagged vessel, on March 29, 2004. Id. ¶ 4.

Under Marward's ownership, the M/V Vladimir, while under charter party and at the direction of the charterer, called at Baltimore, Maryland on April 16 and June 2, 2004; at Charleston, South Carolina on June 9, 2004; at Miami, Florida on June 14, 2004; at Houston, Texas on June 18, August 14, October 21, and December 28, 2004; and at Mobile, Alabama on

---

[1] The Charter at the time of the accident was submitted to the Court by copy of a letter dated August 1, 2006 from Defendant's counsel to Plaintiff's counsel. The Charter provided that the Master be appointed by the owner but will be under the orders and directions of the Charterers as regards employment and agency. Charter ¶ 8.

2

December 19 2004. In 2005, again at the direction of the charterer, the M/V Vladimir called at Mobile, Alabama on March 4, 2005; at Houston, Texas on March 9, May 22, and July 20, 2005; at New Orleans, Louisiana on May 10, 2005; at Galveston, Texas on June 4, 2005; at Newport News, Virginia on July 30, 2005; and at Philadelphia, Pennsylvania on August 17, 2005.[2] Id. ¶ 6. Thus, the M/V Vladimir (formerly the M/V Salvador) called at a U.S. port seventeen times while under Marward ownership during 2004 and 2005.

During Marward's ownership, the M/V Vladimir has not called at New York at any time. Id. ¶ 7. Marward is not registered to do business in the state of New York and does not have a general agent or agent for service of process in New York. Id. ¶ 9. Marward has never conducted business in the State of New York and does not maintain an office or mailing, telephone, or telefax facilities or bank account in New York. Id. ¶ 10. Marward has never advertised nor had a customer in the state of New York. Id. ¶ 11. The Master and crew who were on board the M/V Vladimir on or about May 10, 2004 no longer serve on the vessel and are no longer employed by Marward. Id. ¶ 12.[3]

**DISCUSSION**

Plaintiffs assert jurisdiction over Marward as the owner of the M/V Vladimir pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2) states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

---

[2]On November 1, 2005, the M/V Vladimir was under charter to an unrelated third party. Cuss Decl. ¶ 8.
[3]Marward would appear and defend and would waive any time-bar defense if Plaintiffs were to commence their action in the Republic of Cyprus. Cuss Decl. ¶ 13.

(2006). Plaintiffs claim that the M/V Vladimir was part of a seven-vessel Atlantic line advertised as the only non-stop liner service to Russia from the United States. Affirmation of Paul S. Edelman in Opposition to Marward Shipping Co., Ltd.'s Motion to Dismiss ("Edelman Aff."), dated December 1, 2005, Exhibits ("Exh.") 3 and 4. Plaintiffs assert that between April 2000 and June 2004, the M/V Vladimir docked sixty-four times at nine U.S. ports in seven different states and returned to St. Petersburg twenty-four times. Id., Exh. 8. Plaintiffs also claim that from June 2004 to August 2005, the M/V Vladimir voyaged eighteen [sic] more times to nine U.S. ports, but never again in the course of transporting cargo from U.S. ports through the Baltic Sea to Russia. Id.

Plaintiff argues that based on the movement history of the M/V Vladimir, it is reasonable to infer that when Marward took ownership of the M/V Vladimir subject to the outstanding charter on Marsh 29, 2004, Marward knew and intended its vessel to continue its regularly-scheduled cargo voyages to the destinations of United States ports and Port St. Petersburg. Pl. Mem. in Opp. at 13.

Plaintiffs rely on the Marine Accident Report dated September l6, 2004, Edelman Aff., Exh. 1 at 9, ¶ 8.4, which states that the underwater hull of the Vladimir was inspected in St. Petersburg on May 13, 2004 but that the damage on the hull did not prove a possible collision with the Astrida. Moreover, the Report states that a second inspection request on May 18, 2004 was declined by the Harbor Master of Port St. Petersburg because "inspection of the hull of m/v Valdimir [sic] would cause the vessel's demurrage and losses to the owner since the vessel had already received permission to leave the port, and, therefore, it was offered to the representatives of the MAL [Maritime Administration of Latvia] to perform the inspection at the next port of call." Id. Accordingly, Plaintiffs argue that Marward knew and intended and directed its vessel

4

to continue making its regularly scheduled cargo voyage from Port St. Petersburg (May 12 to May 18, 2004) and U.S. ports (Port Baltimore from June 3 to June 7, 2004 and to other U.S. ports thereafter). Pl. Mem. in Opp. at 14.

In its Reply Memorandum,[1] Marward argued that: Plaintiffs have failed to make a prima facie showing that Marward has sufficient contacts with the United States; Marward's United States contacts are insufficient to establish jurisdiction; and that the assertion of Rule 4(k)(2) jurisdiction over the Defendant is unconstitutional. Reply Memorandum of Law on Behalf of Defendant Marward Shipping Co., Ltd. in Support of Motion to Dismiss ("Def. Reply Mem."). Defendants also moved, in the alternative, to dismiss the case on forum non conveniens grounds, arguing that an adequate forum exists in Cyprus. Def. Reply Mem. at 9-10.

**Burden of Proof**

Plaintiffs have the burden of establishing that the Court can exercise personal jurisdiction over the Defendant. See, e.g., Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); Hvide Marine Int'l Inc. v. Employers Ins. of Wausau, 724 F. Supp. 180, 182 (S.D.N.Y. 1989). If jurisdiction is challenged prior to discovery, the Plaintiff may defeat the motion by a good-faith pleading of legally sufficient allegations. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

At oral argument on July 26, 2006, Defendant argued that the Court cannot exercise jurisdiction under Rule 4(k)(2) unless Plaintiffs carry the burden of proving that "the defendant is not subject to the personal jurisdiction of the courts of another state." Transcript of July 26,

---

[1] Originally, Defendant moved to dismiss Plaintiffs' Amended Complaint, arguing that Marward's contacts with New York are insufficient to confer personal jurisdiction under its long-arm statute without violation of the due process requirements set forth by International Shoe Co. v. Washington, 236 U.S. 310 (1945). Memorandum of Law on Behalf of Defendant Marward Shipping Co., Ltd. in Support of Motion to Dismiss ("Def. Mem.") at 10-11.

5

2006 Oral Arguments ("Tr.") at 3-4. Plaintiffs' counsel acknowledged that there is no Second Circuit case on point but argued that the burden of showing a lack of jurisdiction in any state is borne by the Defendant on a Rule 4(k)(2) motion. Tr. at 16-17; Plaintiffs' Letter Brief, dated July 27, 2006 ("Plaintiffs' 7/27/06 Letter"). At argument, Plaintiffs offered three cases for the proposition that "so long as a defendant does not concede to jurisdiction in another state, a court *may* use 4(k)(2) to confer jurisdiction." See, e.g., Mwani v. Bin Laden, 417 F.3d 1, 11 (D.C. Cir. 2005); Adams v. Unione Mediterranea di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004); ISI Int'l, Incl. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001) (emphasis added).

The cases cited by Plaintiffs, however, do not establish definitively that the burden of proof for jurisdiction and minimum contacts shifts to the Defendant. As the Seventh Circuit stated in ISI International:

> Constitutional analysis for each of the 50 states is eminently avoidable by allocating burdens sensibly. A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). . . . This procedure makes is unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

256 F.3d at 552. Therefore, under the Seventh Circuit ruling, the Court does not have to consider personal jurisdiction in each of the fifty states and the Court is *entitled* to use Rule 4(k)(2), but these cases do not hold that the burden *must* be shifted to the Defendant. In the instant case, since Defendant does not concede that it is subject to personal jurisdiction in some other state[2], the better authority holds that Plaintiff is not relieved of its burden under Rule

---

Defendant addressed Plaintiffs' Rule 4(k)(2) argument in its Reply Memorandum of Law. Def. Reply Mem. at 6-9.
[2] In its letter brief of July 28, 2006, Defendant argues that "no defendant challenging the minimum contacts element of Rule 4(k)(2) would ever concede that it is subject to the jurisdiction of the court of general jurisdiction of a state.

4(k)(2) of establishing that there is personal jurisdiction. This approach is outlined in United States v. Swiss Am. Bank, Ltd., 191 F.3d 30 (1st Cir. 1999), in which the First Circuit stated:

> We hold that a plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule. This includes a tripartite showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. The plaintiff, moreover, must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state. If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient. See generally Stephen B. Burbank, The United States' Approach to International Civil Litigation: Recent Developments in Forum Selection, 19 U. Pa. J. Int'l Econ. L. 1, 13 (1998) (suggesting a broad outline for a similar burden-shifting regime vis-à-vis the Rule 4(k)(2) negation requirement).

191 F.3d at 41-42; see also Daventree Ltd. v. Republic of Azer., 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004).

Applying Swiss American Bank, it is well-established in this District that admiralty and maritime claims arise under federal law for purposes of Rule 4(k)(2). See, e.g., Mutualidad Seguros del Instituto Nacional de Industria v. M.V. Luber, 1998 U.S. Dist. LEXIS 23165 at *4 (S.D.N.Y. Sept. 28, 1998); Norvel Ltd. v. Ulstein Propeller AS, 161 F. Supp. 2d 190, 200 (2001). There is no claim here that personal jurisdiction exists under any situation-specific federal statute. Therefore, Plaintiff has the burden of showing that Defendant is not subject to jurisdiction of the courts of general jurisdiction of any state and that Marward has sufficient minimum contacts in the United States so that "the exercise of jurisdiction is consistent with the Constitution and laws of the United States." Rule 4(k)(2).

---

making such a concession would completely undermine the defendant's challenge to the minimum contacts

**Due Process Requirement**

The Due Process Clause of the Fourteenth Amendment limits the power of a court to exert personal jurisdiction over a nonresident defendant. Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987). In the seminal case of International Shoe Co. v. Washington, the Supreme Court articulated the due process requirement that in order to subject a defendant to personal jurisdiction, he must have certain "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice'" 236 U.S. at 316 (internal citation omitted).

The "minimum contacts" prong requires that the Court determine whether the Defendant has sufficient contacts with the forum such that he invoked the benefits and protections of the forum's laws and could reasonably anticipate being haled into court there. See, e.g., Asahi, 480 U.S. at 109-12; International Shoe, 326 U.S. at 316; Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985); Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-68 (2d Cir. 1996). In addition, for purposes of the minimum contacts inquiry:

> [A] distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum'; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. Helicopteros [Nacionales de Colombia, S.A. v. Hall], 466 U.S. [408,] 414-16 & nn.8-9. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.' Helicopteros, 466 U.S. at 416. . . . .

Metropolitan Life Ins., 84 F.3d at 567-68.

---

requirement." Defendant's Letter Brief, dated July 28, 2006, at 3.

Once it has been established that a Defendant has sufficient minimum contacts with the forum, the Court must then determine whether it would be reasonable to exercise jurisdiction over the Defendant. In Metropolitan Life Ins., the Second Circuit stated:

> The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable under the circumstances of the particular case. See International Shoe, 326 U.S. at 316, 66 S. Ct. at 158. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Asahi, 480 U.S. at 113-14, 107 S. Ct. at 1032-33; see also Burger King, 471 U.S. at 476-77, 105 S. Ct. at 2184-85; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980); A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 83 (2d Cir. 1993) (discussing factors). While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' Burger King, 471 U.S. at 477, 105 S. Ct. at 2185.

Metropolitan Life Ins., 84 F.3d at 568. In determining whether it may exercise jurisdiction over a particular Defendant, the Court must "weigh the relative strengths and weaknesses of each requirement – that is, depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." Id. Therefore, if a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper.

## I. Minimum Contacts with the United States

Plaintiffs have failed to demonstrate that Marward Shipping has had sufficient contacts

with the United States to enable the Court to exercise personal jurisdiction.

The case involves a collision that purportedly occurred in the Baltic Sea in May 2004 during the course of the M/V Salvador's[3] regularly-scheduled cargo service between Port Baltimore in Maryland and Port St. Petersburg in Russia.[4] After Marward acquired the M/V Salvador in March 2004 and it was renamed the M/V Vladimir on May 10, 2004, the vessel made seventeen stops at United States ports, all at the direction of the charterer. There was an inspection of the Marward in June 2004 in Baltimore, but this was requested by the maritime authority of Latvia. Latvian officials came to the United States to inspect the vessel, along with Coast Guard officials and several experts. Tr. at 5.

Plaintiffs argue that these aggregate contacts with the United States justify the Court's exercise of jurisdiction over Marward. Defendant maintains that "the owner of the vessel is not purposely availing itself of the benefits of doing business in the jurisdiction by allowing a charterer to direct the vessel to come to the United States. That doesn't constitute a sufficient minimum contact so far as the owner is concerned . . ." Tr. at 8. Defendant relies on the decision by Judge Wood of the Southern District of New York in <u>Mutualidad Seguros del Instituto Nacional de Industria v. M.V. Luber</u>, 1998 U.S. Dist. LEXIS 23165 at * 6, which held that personal jurisdiction was not proper because the owner-defendant of a vessel under charter "did not 'purposely avail itself of the privileges of conducting activities' within this forum." As Judge Wood stated, "the relevant question is not [Defendant's] awareness or control of the condition of the vessel, but its destination. Where the vessel's owner has ceded authority to the charterer, the choices of the latter cannot be imputed to the former." <u>Id</u>.

---

[3] The name of the M/V Salvador was changed to M/V Vladimir after the ship was purchased by Marward. Pl. Mem. in Opp. at 1.
[4] Defendant disputes the allegations that there was a collision and that their vessel collided with the fishing vessel

A subsequent case in the Sixth Circuit, Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 221 n.10 (6th Cir. 2006), disagreed with the holding in Mutualidad, stating that it was inconsistent with Sixth Circuit precedent and at odds with some district court cases that have found jurisdiction over a foreign vessel owner that charters its boats to a third party. In Fortis, the Sixth Circuit reversed the district court's ruling that it lacked jurisdiction over the Norwegian owner and manager of a chartered and sub-chartered vessel. The court explained:

> The relevant question is whether defendants purposefully availed themselves of the benefits of the forum state, Ohio. Defendants derived the same benefit – and hence their contacts with the forum state are the same – regardless of whether they were working with an American or Canadian [charterer] company. Indeed, other shipping cases that have found personal jurisdiction over a foreign vessel owner have conspicuously failed to refer to whether the vessel operator was American or foreign.

Fortis, 450 F.3d at 220.

The Sixth Circuit is precedent of which this Court must take cognizance. The decision in Fortis, however, is distinguishable from the instant case. The district court in Fortis relied on Justice O'Connor's "stream of commerce plus" test from Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987), which stated that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state . . ." Applying the Asahi formulation to the circumstances in Fortis, the court found that the owner-manager defendants rigged their vessels to ship products to the Great Lakes ports, including Toledo[5], and that such a design, "plus the frequent calls to [those] ports," was sufficient to establish purposeful availment of the forum state (Ohio). Fortis,

---

that sank. Tr. at 4-5.

[5] The defendants in Fortis were found to have outfitted and rigged their ships to sail into the Great Lakes, and the defendants "confirmed in the Charter Agreement that 'the vessel is suitable for Toledo.'" Fortis, 450 F.3d at 221.

11

450 F.3d at 222. The court also examined the case of Mott v. Schelling & Co., 1992 U.S. App. LEXIS 13273 at * 17-18 (6th Cir. May 29, 1992), in which the appellate court concluded that defendant Schelling knew its saws were being sold in the United States because the company "actively cultivated its market here, and benefited from numerous U.S. sales, including the one in this case, over many years." Fortis, 450 F.3d at 221.

Under Fortis and Mott, therefore, the "crucial question [was] whether defendants designed their product for or directed their products to the forum state . . ." Id. at 221. In Mutualidad, however, there was no showing that the owner-defendant designed its vessel for United States ports, and Judge Wood based her conclusion on the fact that there was no purposeful availment by the owner-defendant of the privileges of conducting activities within the forum. 1998 U.S. Dist. LEXIS 23165 at *6-7. Here, Marward bought the vessel subject to the terms of the charter and was bound by those terms. See supra p. 2. There is no showing of any act by Defendant Marward by which it purposefully availed itself of the benefits and protections of the laws of the United States. The trips made to the United States ports at the direction of the charterer and the inspection of the vessel in Baltimore, at the direction of the Latvian authorities, are not sufficient to establish the minimum contacts necessary to exercise jurisdiction over Marward.

## II. Whether the Exercise of Jurisdiction Over Defendant Comports with the Reasonableness Requirements of Due Process

Even if Plaintiffs had demonstrated that the Defendant had sufficient minimum contacts, the Court would then have to examine the reasonableness factors of Asahi. As the Second Circuit acknowledged in Metropolitan Life Ins.:

> [T]he Supreme Court has not had occasion to conduct the reasonableness inquiry

> in a general jurisdiction case – <u>Asahi</u> and <u>Burger King</u> were both specific jurisdiction cases. However, every circuit that has considered the question has held, implicitly or explicitly, that the reasonableness inquiry is applicable to *all* questions of personal jurisdiction, general or specific. . . . Inasmuch as we see no basis for distinguishing between general jurisdiction and specific jurisdiction cases for the purposes of the reasonableness inquiry, and there is no indication that the Court intended to limit the inquiry to specific jurisdiction cases, we agree with other courts of appeals that it is appropriate in general jurisdiction cases.

84 F.3d at 573. Accordingly, the five-factor <u>Asahi</u> test is appropriate to apply here.

Applying the first factor, there are difficulties associated with requiring Marward, a Cypriot corporation with is sole place of business in Limassol, Cyprus, to defend this suit in New York. None of the records, files, or witnesses with information about the litigation are located in New York, and Marward does not have substantial business contacts with the State of New York that would cause it to expect to have to defend a lawsuit here. On the other hand, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." <u>Metropolitan Life Ins.</u>, 84 F.3d at 574. Overall, litigating a case in New York would be a substantial burden for Marward but not an overwhelming one.

With regard to the second factor, the interests of the United States are not substantially implicated by the dispute between the Plaintiffs and Marward. The only real connection to the United States was that the M/V Salvador was on a Baltimore–St. Petersburg route. However, the alleged collision occurred in the Baltic Sea between the F/V Astrida, a Latvian-flagged fishing vessel, and the M/V Salvador, a ship owned by a Cypriot-based corporation without any facilities, agents, or business in the United States. Defendant took no action, aside from permitting its ship to be inspected in Baltimore by the Latvian inspector, the Coast Guard, and other experts, that was directed at or that affected the interests of the United States. Thus, the United States does not have a strong interest in adjudicating the case.

With respect to the third factor of Plaintiffs' interest in obtaining convenient and effective relief, there is no showing that the Plaintiffs are residents of the United States or that it would be more convenient for any Plaintiff to litigate in the United States rather than another country.[6] This factor weighs in favor of Marward's motion to dismiss.

In evaluating the efficient administration of justice factor, "courts generally consider where witnesses and evidence are likely to be located." Metropolitan Life Ins., 84 F.3d at 574 (internal citations omitted). Defendant is a nonresident of the United States, and the M/V Vladimir is not permanently docked in any United States locale.[7] Plaintiffs are Latvian individuals, and the M/V Vladimir's crew and captain at the time of the alleged collision were Ukrainian. Tr. at 12-13. An inspection of the hull of the M/V Vladimir was conducted by United States residents, but an earlier inspection was conducted in St. Petersburg by Latvian authorities. See Pl. Mem. in Opp. at 14-15; Edelman Aff. Exh. 1 at 9, ¶ 8.4; Def. Reply Mem. at 10  Since there is no showing that the Plaintiffs are residents of the United States, and Plaintiffs have not demonstrated that any of the witnesses or other evidence is located in New York, this factor also weighs in favor of no personal jurisdiction.

Finally, Plaintiffs have offered no policy arguments in their favor which would support a finding that it would be reasonable to subject Marward to the personal jurisdiction of the United States. Accordingly, after considering all the factors prescribed in Asahi, it would be unreasonable to exercise jurisdiction over Marward, and exercising jurisdiction over Marward would offend traditional notions of fair play and substantial justice.

---

[6] In addition, the plaintiffs in Fortis claimed rust damage to steel cargo destined for use in the United States, and Asahi was a products liability suit involving an accident that caused damages to persons in the United States. In contrast, the Latvian plaintiffs here, see Tr. at 12-13, sustained loss due to the death of six seamen in the Baltic Sea.
[7] According to Claudio Cuss, as of November 1, 2005, the M/V Vladimir was under charter to an unrelated third party and was in India. Cuss Decl. ¶ 8.

14

Having concluded that Plaintiffs have been unable to satisfy the requirements for personal jurisdiction, the Court need not discuss Defendant's alternative motion to dismiss on the grounds of forum non conveniens.

**Jurisdictional Discovery**

Plaintiffs argue that the Court should permit plaintiffs to conduct jurisdictional discovery to "examine the full range of Marward's substantial and continuous contacts with the United States." Pl. Mem. in Opp. at 21. "It is within a district court's discretion to determine whether a plaintiff is entitled to conduct jurisdictional discovery and to 'devise the procedures [to] ferret out the facts pertinent to jurisdiction.'" Daventree, 349 F. Supp. at 761, citing APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003). A plaintiff should be given "ample opportunity to secure and present evidence relevant to the existence of jurisdiction" through jurisdictional discovery. Id. Here, the Plaintiffs have received from Defendant the relevant charters and conducted considerable other discovery of facts concerning the movement history of the M/V Vladimir. However, Plaintiffs wish to conduct additional discovery of: 1) all Marward-owned vessels that have called upon United States ports in the last five years; 2) all charter parties for the M/V Vladimir; and 3) evidence that Marward knew and directed the M/V Vladimir to continue its service between U.S. ports and Port St. Petersburg through May 2004. Pl. Mem. in Opp. at 21. Defendant's response, see Def. Reply Mem. at 9 n.10, shows that such discovery is unlikely to identify any genuine issue of jurisdictional fact. Nevertheless, Plaintiffs must be given ample opportunity to unearth such facts. Accordingly, the Court will allow this discovery, but it must be completed promptly. Unless sufficient additional grounds for personal jurisdiction over Marward are presented to this Court within 60 days of the issuance of this opinion, this action will be dismissed.

## CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' motion for additional jurisdictional discovery for 60 days. Unless sufficient grounds are submitted to support jurisdiction over Marward, the Court will grant Defendants' motion to dismiss pursuant to Federal Rule 4(k)(2).

IT IS SO ORDERED.

Dated: New York, New York
August 24, 2006

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Order sent to:

Counsel for Plaintiffs:

Kreindler & Kreindler, LLP
100 Park Avenue
New York, NY 10017
By: Paul S. Edelman
Tel: 212-687-8181
Fax: 212-972-9432

Counsel for Defendant:

Healy & Baillie, LLP
61 Broadway, 32nd Floor
New York, NY 10006-2834
By: John D. Kimball
Tel: 212-943-3980
Fax: 212-425-0131